United States District Court
District of Massachusetts

CA 04-30115-KPN

<u>Plaintiff's Name</u>
Behzad A. Samimi
36 Emerald Rd.
Springfield, MA 01119
413-782-0258

<u>Defendent Name</u>
Tyco Healthcare/Ludlow/Kendall-LTP (Ludlow technical products; LTP)
two Ludlow park Drive
Chicopee, MA 01022
413-593-6400

1) - the plaintiff is a resident of Springfield, MA (Hampden) and a citizen of the united states

2) - the defendant "Tyco/Healthcare/Ludlow/Kendall-LTP is a resident of Chicopee, MA and a citizen of the united states

Mag/bridge
CF, LR 7H#
4.1 to
4,5

## Facts of the case

I Behzad A. Samimi was employed at "TYCO/Healthcare/ Ludlow/Kendall-LTP" between the time of June 2000 to Feb 2002. I was employed as a "Manufacturing Supervisor" where approx. 800 workers were employed there (A non-union manufacturing company — 37 billion dollars worth of assets). The company had many eminent health & safety danger issues. Many issues of life & death safety concerns to the manufacturing workers. Many times I raised safety concerns and gave the company many chances to correct these safety concerns. We had many accidents in which workers permanently were disfigurated and lost fingers and burned their body (over 75%) — Many of these accident could have been prevented if they would have taken corrective actions of my safety concerns. Since my repeated concerns over the period of 1 and half years were ignored and there was a serious chance that other workers could have very very well get seriously hurt or lose their life, I demanded in writing to the very top management of the company that these issues of eminent danger to worker to be corrected — Approximately 3-weeks after that demand letter I was retaliated against and was scorted out of bldg. (Laid-Off) on Feb 2002.

I was offered a generous severant package in which I refused to sign the agreement. By signing the agreement I would have waved all my civil rights of taking future actions —

please notice that I was the only employee that was laid off in that company of 800 employees — In fact I was told that I was the only employee laid off in the history of the company to that date —

I filled complaint both to OSHA & MCAD they concluded that my complaint was filed untimely (not within 30-days) — and OSHA dismissed my case but offered me that I can pursue this case on my own —

please notice that after my file with OSHA, OSHA visited the site and many of my safety concern were also cited by OSHA —

—please see attached complaint letters to MCAD & OSHA for detail of case

I am looking for a <u>trial by jury</u> for unspecified pain & suffering as the result of retaliation employment discharge — please see attached for list of suffering in complaint letters —

Sincerely Yours
Behzad Samimi

June 17, 2004

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Behzad A. Samimi
36 Emerald Rd.
Springfield, MA 01109

From: Boston Area Office
John F. Kennedy Fed Bldg
Government Ctr, Room 475
Boston, MA 02203

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16C-2002-02866 | Anne R. Giantonio, Intake Supervisor | (617) 565-3189 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*[signature]*

Robert L. Sanders
Director

MAR 2 5 2004

(Date Mailed)

Enclosure(s)

cc: TYCO/HEALTHCARE/LUDLOW/KENDALL-LTP
2 Ludlow Park Dr.
Chicopee, MA 01022

**U.S. Department of Labor**  Occupational Safety and Health
Administration
1441 Main Street Room 550
Springfield, MA 01103
(413) 785-0123
(413) 785-0136

**Reply to the attention of:**
Carole Horowitz

August 19, 2002

COPY

Tom Costella
Director of Plant Operations
Tyco Healthcare
Two Ludlow Park Drive
Chicopee, MA  01022


Re:  Tyco Healthcare/Samimi/1-1270-02-014

Dear Mr. Costella:

We hereby serve you notice that a complaint has been filed with this office by Behzad A. Samimi, alleging a violation of Section 11(c) of the Occupational Safety and Health Act, Public law 91-596. Mr. Samimi alleged that the termination of his employment on February 8, 2002, was in retaliation for numerous health and safety complaints made to management during his employment. However, because Section 11(c) discrimination complaints must be filed within thirty days of when the discrimination occurs, OSHA is dismissing this complaint as untimely filed.

The complainant is afforded the opportunity to file an appeal of this dismissal with the U.S. Department of Labor-OSHA, in Washington, D.C., within 15 days of the dismissal date. In the event that no appeal action is taken by the complainant, this case will be considered closed.

If at any time you have any questions or require any information regarding employee rights and employer responsibilities under Section 11(c) of the Occupational Safety and Health Act, please feel free to contact this office by mail or telephone.


Sincerely,                              Investigator:   Carole Horowitz

Ronald E. Morin
Area Director

## MEMORANDUM

TO: CASE FILE
CASE NAME: *Samimi v. Tyco/Healthcare/Ludlow/Kendall-LTP*
DOCKET NO: 022302643
EEOC NO: 16CA202866
NUMBER OF EMPLOYEES: 25+
INVESTIGATOR: Maryann K. Brunton

RE: **RECOMMENDATION FOR DISMISSAL OF COMPLAINT**
DATE: **April 30, 2003**

### ISSUE(S) INVESTIGATED:

On August 6, 2002, Complainant filed a charge alleging that Respondent discriminated against him by subjecting him to unequal terms and conditions of employment and terminating his position of employment because of his national origin (Iranian). Complainant asserted that Respondent's conduct was in violation of M.G.L. Chapter 151B, s4 (1), and Title VII of the Civil Rights Act of 1964, as amended.

### SUMMARY OF FINDINGS:

Respondent denied the allegations. The evidence presented supports Respondent's claims that Complainant was not treated differently than similarly situated employees outside of his protected class. Respondent states that due to a decrease in the product manufactured by employees supervised by Complainant, his position was eliminated and his duties were combined with another supervisor's duties. The other supervisor was retained because his department was adjacent to Complainant's, he had more direct reports at the time, and he had more seniority than Complainant. Therefore, there is insufficient evidence that Respondent unlawfully discriminated against Complainant.

_____
Maryann K. Brunton
Compliance Officer

_____
Migdalia Rivera
Supervisor

**U.S. Department of Labor**  Occupational Safety and Health Administration
Washington, D.C. 20210

Reply to the attention of:



OCT 22 2002

Mr. Behzad Samimi
36 Emerald Road
Springfield, MA 01119

Dear Mr. Samimi:

This is in response to your appeal of the decision to dismiss your complaint against Tyco Healthcare, filed under Section 11(c) of the Occupational Safety and Health Act of 1970. A complete and comprehensive reconsideration of your complainant has been conducted, including a review of the entire investigative file and related documents.

Based on a review of the investigative file, I have concluded that your complaint was filed untimely. Specifically, an 11(c) complaint must be filed within 30 days of the adverse action. By your own admission, you were terminated on February 8, 2002; you did not file your complaint with OSHA until August 6, 2002, 181 days later. Additionally, the circumstances of your case did not meet OSHA's criteria for tolling the statutory 30-day filing period.

At this time, I must, therefore, inform you that OSHA cannot pursue your appeal any further. I regret I cannot be of further assistance to you.

Sincerely,

Richard E. Fairfax, Director
Directorate of Enforcement Programs

# MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION
436 DWIGHT STREET, RM 220, SPRINGFIELD, MASSACHUSETTS 01103
(413 739-2145)

## -DISMISSAL and NOTIFICATION of RIGHTS-

To: Mr. Behzad A. Samimi  
36 Emerald Street  
Springfield, MA 01109  

DATE 5/6/3  
Case: Samimi v. Tyco/Healthcare/Ludlow/Kendall  
Docket No: 022302643  
EEOC No: 16CA202866  
Investigator: Maryann K. Brunton  

Your complaint is dismissed for the following reasons:

[ ] The facts you allege fail to state a claim under any of the statutes the Commission enforces.

[ ] Respondent employs less than the required number of employees.

[ ] Your complaint was not timely filed with the Commission, i.e. you waited too long after the date(s) of the alleged discrimination to file. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[ ] You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conference, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your complaint. You have had more than 30 days in which to respond to our written request.

[ ] The Commission's efforts to locate you have been unsuccessful. You have had at least 30 days in which to respond to a notice sent to your last known address.

[ ] The Respondent has made a reasonable settlement, offering full relief for the harm you alleged. 30 days have expired since you received actual notice of this settlement offer.

[XX] The Commission issues the following determination. Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes a violation of the statutes. This does not certify that the Respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this complaint.

[ ] Other (briefly state)

## -NOTICE of APPEAL-

If you wish to appeal the dismissal of your complaint and believe that the above stated reason for dismissal is incorrect, you may appeal to this Commission within 10 days after receipt of this notice. Your appeal of the dismissal must be made in writing by you or your attorney to the appeals clerk of this Commission (Attention: Migdalia Rivera).

All employment complaints, where applicable, were filed by the MCAD with the Equal Employment Opportunity Commission. Our finding, which will be forwarded to its area office, JFK Building, Boston, MA will be given substantial weight provided that such findings are in accordance with the requirements of Title VII of the Civil Rights Act of 1964, the ADEA, and/or the ADA, as amended.

Cynthia A. Tucker  
Investigating Commissioner

DATE: 5/5/03

cc: Andrew C. Pickett, Esquire  
Jackson, Lewis  
1 Beacon Street  
Boston, MA 02108

# SEVERANCE PACKAGE SUMMARY

| | | | |
|---|---|---|---|
| Name: | Behzad A. Samimi | SS Number: | 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 |
| Position: | Supervisor | Location: | Chicopee |
| Co. Seniority Date: | 6/19/00 | Supervisor: | J. Thomson |

Last Day of Actual Work:  2/08/02

Date Layoff/Job Elimination Begins:  2/23/02

## SEVERANCE PACKAGE:

| | | | |
|---|---|---|---|
| Number of years worked: | 1 year | Minimum Severance = 8 weeks | $7,567.36* |
| Number of mos. over complete years | 8 months | 8 weeks x $945.92 = | |
| Length of Service Premium Notice Pay (Regular Pay = 2 weeks) | | 2 weeks x $945.92 = | $1,891.84 |
| Regular Pay end date: | 2/22/02 | | |
| Severance Pay start date: | 2/25/02 | | |
| Severance Pay end date | 4/19/02 | | |
| | | TOTAL SEVERANCE | $9,459.20 |

## VACATION PAY/:

| | |
|---|---|
| Vacation balance from this year = 3 weeks x $945.92 = | $2,837.76 |
| TOTAL VACATION | $2,837.76 |

**Total Severance & Vacation Pay**   **$12,296.96**

*Severance pay will be paid bi-weekly until it is finished.*

### Important Telephone Numbers:

| | |
|---|---|
| SHPS Health Plan (Cobra) | 1-800-301-7556 |
| Fidelity (401 k) | 1-888-222-8926 |
| Computershare (Stock) | 1-800-621-3777 |
| Cigna Healthcare Member Services | 1-800-694-9398 |
| Prudential (Dental) Group No. 37570 | 1-800-741-4781 |
| Express Scripts RX | 1-800-305-2179 |
| Employee Assistance Program | 1-877-262-1075 |
| Cigna Group Life Insurance | 1-800-828-3485 |

* Eight (8) weeks of severance conditioned upon signed release.

# SEVERANCE PACKAGE SUMMARY

| | |
|---|---|
| Name: Behzad A. Samimi | SS Number: 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 |
| Position: Supervisor | Location: Chicopee |
| Co. Seniority Date: 6/19/00 | Supervisor: J. Thomson |

Last Day of Actual Work: 2/08/02

Date Layoff/Job Elimination Begins: 2/23/02

## SEVERANCE PACKAGE:

| | | | |
|---|---|---|---|
| Number of years worked: | 1 year | Minimum Severance = 8 weeks<br>8 weeks x $945.92 = | $7,567.36* |
| Number of mos. over complete years | 8 months | | |
| Length of Service Premium | | | |
| Notice Pay (Regular Pay = 2 weeks) | | 2 weeks x $945.92 = | $1,891.84 |
| Regular Pay end date: | 2/22/02 | | |
| Severance Pay start date: | 2/25/02 | | |
| Severance Pay end date | 4/19/02 | | |
| | | **TOTAL SEVERANCE** | $9,459.20 |

## VACATION PAY/:

| | |
|---|---|
| Vacation balance from this year = 3 weeks x $945.92 = | $2,837.76 |
| **TOTAL VACATION** | $2,837.76 |

**Total Severance & Vacation Pay**  $12,296.96

*Severance pay will be paid bi-weekly until it is finished.*

### Important Telephone Numbers:

| | |
|---|---|
| SHPS Health Plan (Cobra) | 1-800-301-7556 |
| Fidelity (401 k) | 1-888-222-8926 |
| Computershare (Stock) | 1-800-621-3777 |
| Cigna Healthcare Member Services | 1-800-694-9398 |
| Prudential (Dental) Group No. 37570 | 1-800-741-4781 |
| Express Scripts RX | 1-800-305-2179 |
| Employee Assistance Program | 1-877-262-1075 |
| Cigna Group Life Insurance | 1-800-828-3485 |

\* Eight (8) weeks of severance conditioned upon signed release.

**tyco** / Healthcare / **Ludlow**

The Ludlow Company, LP
Two Ludlow Park Drive
Chicopee, MA 01022

**HAND DELIVERED**

February 8, 2002

Mr. Behzad A. Samimi
36 Emerald Road
Springfield, MA 01119

Dear Behzad:

As a result of our need to reduce costs in the current economic climate, the decision was made to eliminate your position. This letter is intended to summarize your basic termination benefits and summarize the terms of additional separation benefits that we are willing to offer you during your transition to new employment. Please read this letter agreement, which includes a general release, carefully. If you are willing to agree to its terms, please sign in the space provided below and return it to me within 21 days so that your separation benefits can begin.

1. Regardless of whether you choose to sign this agreement or not, your employment with Ludlow will end on February 22, 2002, (the "Separation Date"), although your last day at work will be today. You will receive all unused vacation time on or before your separation date. If you choose to sign this letter agreement, your separation may be treated as a resignation, if you so desire, otherwise it will be treated as a position elimination.

2. If you decide to sign this letter agreement within 21 days, you will receive additional severance pay, in the amount of $7,567.36, which represents an additional eight (8) weeks of pay. This amount will be paid to you in the form of salary continuation at your regular base rate of pay until the additional severance amount is paid in full. Please note that these severance payments will begin within 10 business days after Ludlow receives a signed agreement from you.

   Also if you decide to sign this letter agreement, Ludlow will arrange for three (3) months of career counseling through Drake Beam Morin, a nationally known outplacement firm.

3. Your group health insurance and dental insurance ends as of February 28, 2002 after which time you may be eligible for group coverage through COBRA for an additional 18 months by paying 102% of the premium cost. You will be contacted directly by SHPs, our third party COBRA administrator, approximately seven (7) days after your termination date. If you choose to sign and return this separation agreement, Ludlow will reimburse you for your COBRA premiums for the first month of COBRA coverage.

   Your participation and eligibility for further benefits under any other employee benefit plan offered by Ludlow will cease as of the Separation Date, unless otherwise provided in the applicable plan documents.

Mr. Behzad A. Samimi
February 8, 2002
Page Two

4. It is customary practice that a separation agreement should contain a release provision. Therefore, in consideration of the separation payment to be made to you in paragraph two, as well as the promises contained in this letter agreement, you voluntarily and of your own free will agree to release and forever discharge Ludlow, its affiliated companies, officers, directors and employees from any claims you could bring against them arising out of your employment, including, but not limited to those arising under the Massachusetts law against discrimination, G.L. c. 151B, the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., the National Labor Relations Act, 29 U.S.C. §151 et seq., the Fair Labor Standards Act, 29 U.S.C. §201, et seq., the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq., the Civil Rights Act of 1866, 42 U.S.C. §1981 et seq., the Rehabilitation Act of 1973, 29 U.S.C. §701 et seq., the Equal Pay Act of 1963, 29 U.S.C. §206(d), the Civil Rights Act of 1991, the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq., the Massachusetts Wage and Hour Laws, G.L. c. 151, the Massachusetts Civil Rights Act, G.L. c. 93, the Massachusetts privacy statute, G.L. c. 214, § 1B, the Massachusetts Wage Payment Statute, G.L. c. 149, § 148 et seq., the Massachusetts Sexual Harassment Statute, G.L. c. 214 § 1C, the Massachusetts Consumer Protection Act, G.L. c. 93A, the Massachusetts Civil Rights Act, G.L. c. 12, § 11, the Massachusetts Equal Rights Act, G.L. c. 93, any other federal, state, or local human or civil rights, wage-hour, pension or labor law, rule and/or regulation, or public policy, any claim for breach of contract, contract or tort laws, rules and/or regulations, or any claim arising under common law, such as claims for malicious prosecution, defamation, false imprisonment, libel, slander, invasion of privacy, negligence, interference with advantageous relations, infliction of emotional distress, or otherwise.

5. You understand and agree that you would not receive the additional severance pay and/or benefits specified in this letter, except for your execution of this letter agreement and general release.

6. You agree that you will not disclose to anyone, either directly or indirectly, any information regarding the substance of this letter agreement and general release. This includes, but is not limited to, any present or former employees of Ludlow and other members of the general public. You further agree that you will not make negative comments about or disparage Ludlow or its officers and employees. A violation of this paragraph will be deemed a serious breach of the Agreement.

7. Federal law requires that we give you up to 21 days to consider the meaning and effect of this letter agreement and general release, although you may sign the agreement and begin receiving severance payments sooner, if that is your wish. You may also wish to consult with an attorney, and acknowledge that you have had the opportunity to do so. Federal law also gives you the right to revoke this letter agreement and general release for a period of seven (7) days following the day you sign it. If you choose to revoke the agreement, you must submit your revocation, in writing, to me and state "I hereby revoke my acceptance of the letter agreement and general release", together with your signature and the date. The revocation must be personally delivered to me, or mailed to me at Ludlow with a postmark that is within seven days of your execution of the letter agreement and general release. This letter agreement and general release shall not become effective or enforceable until the seven day revocation period has expired.

8. This letter agreement and general release may not be modified, altered or changed in any way except by the written agreement and consent of both you and me, as the authorized representative of Ludlow.

Mr. Behzad A. Samimi
February 8, 2002
Page Three

9. By signing this letter, you confirm that you have not filed any claim, charge or action against Ludlow, and that you will not seek any money or damages from Ludlow based upon any claim arising out of your employment at Ludlow.

10. By signing this letter, you confirm that you have been paid and/or has received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which you may be entitled, and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions and/or benefits are due to you, except as provided in this letter agreement and any other correspondence you receive in connection with your separation from employment. You also affirm that you have no known workplace injuries or occupational diseases and that you have been provided and/or have not been denied any leave requested under the Family and Medical Leave Act.

11. Ludlow agrees that it will provide its standard reference in response to any inquiries from future employers. This reference consists of your positions and dates of employment, and the fact that your position was eliminated and/or that you resigned from Ludlow to pursue career opportunities elsewhere. You agree that you will instruct anyone seeking a reference to direct all reference requests to me. You also agree that you will not apply for or accept future employment at Ludlow.

12. It is expressly understood and agreed that this letter agreement does not constitute an admission by either you or Ludlow that either party has done anything wrong or acted improperly with respect to your employment at Ludlow.

13. This letter agreement, which includes a general release, represents the complete agreement between you and Ludlow, except for any post-employment obligations concerning non-disclosure of confidential information, which remain in full force and effect. You acknowledge and agree that you have not relied on any representations, promises or agreement of any kind made to you in connection with your decision to sign this letter agreement and general release, except those stated in this agreement.

On behalf of Ludlow, I wish you every success in your transition to new employment.

Sincerely,

*[signature: Donna Heffernan-McLear]*

Donna Heffernan-McLear
Human Resources Manager


I, Behzad A. Samimi, hereby acknowledge that I have read this letter agreement and general release, that I have been given a reasonable time to consider its terms, and that I knowingly and voluntarily have agreed to sign this agreement and general release.

Date:_____          By:_____
                                          Behzad A. Samimi

# BEHZAD A. SAMIMI

36 Emerald Road • Springfield, Massachusetts 01119
Email: samimibdvs@aol.com/ Home: (413) 782-0258

---

| | | |
|---|---|---|
| To: Ms. Laura Brelsford<br>Massachusetts Commission<br>Against Discrimination<br>439 Dwight Street, Suite 220<br>Springfield, MA 01103 | & | To: U.S. Department of Labor<br>Occupational Safety & Health Administration<br>1441 Main Street, Room 550<br>Springfield, MA 01103-1493 |
| Date: August 1, 2002 | | Date: August 6, 2002 |

Dear Ms. Brelsford & Ms. Carol Horwitz:

I have been employed by "TYCO Healthcare/ Ludlow/ Kendall-LTP" for approximately 21 months. During the entire time of my employment, starting from my original hiring & interviewing process and thereafter until my final termination, the employer and it's management have shown various blatant forms of discrimination and general workplace hostility toward me. This position termination has been as the result of a series of planned and a combination of many different categories of racially motivated and discriminatory behaviors. Consequently, I have all along been adversely affected, treated unfairly, and discriminated against by one after another sequences as a result of employer misconduct. The office location where I worked in "Hydro-gel/ Promeon Department" is as follows:

**TYCO Healthcare/ Ludlow/ Kendall-LTP**, *(Ludlow Technical Products, LTP)*
**Two Ludlow Park Drive, Chicopee, MA 01022**
**(413) 593-6400**

According to the employer official web-site, "TYCO operates in more than 100 countries and had fiscal 2001 sales in excess of 36 billion dollars. TYCO employs 250,000 people around the world, and runs its operation from Exeter, NH." But, its headquarters are located offshore in "Bermuda". (According to the recent national and local headline news controversy that Tyco's Bermuda headquarters location had been chosen to avoid paying American taxes is an unpatriotic). Its headquarter address is as follows:

TYCO International Ltd.
The Zurich Centre, Second Floor
90 Pitts Bay Road, Pembroke, HN 08, Bermuda
(414) 292-8674, (www.tyco.com)

TYCO Regional Main Operation Office address is as follows:
TYCO International (US) Inc.
One Tyco Park, Exeter, NH 03833
(603) 778-9700

Kendall/ TYCO Main Office address is as follows:
Kendall/ TYCO Healthcare
15 Hampshire Street, Mansfield, MA 02048
(508) 261-08000, (www.kendallhq.com)

DISCRIMINATION COMPLAINT
MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION AND EEOC

FEPA NO.:                           FILING DATE:
EEOC NO.:                           VIOLATION DATE: 2/8/02

NAME OF AGGRIEVED PERSON OR ORGANIZATION:
Behzad A. Samimi                    TELEPHONE NUMBER (413) 782-0258
36 Emerald Rd.
Springfield, MA 01109

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT
AGENCY OR STATE/LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED
AGAINST ME:
TYCO/Healthcare/Ludlow/Kendall-LTP   TELEPHONE NUMBER (413) 593-6400
2 Ludlow Park Dr.
Chicopee, MA 01022                   NO. OF EMPLOYEES: 25+

RECEIVED
AUG 08 2002
Commission Against
Discrimination
Springfield Office

CAUSE OF DISCRIMINATION BASED ON: National Origin (Iran)

THE PARTICULARS ARE:

Most recently, on February 8, 2002, Kendall/TYCO Healthcare discriminated against me by terminating my employment based on my national origin (Iran). I was also subjected to unequal terms and conditions of my employment immediately after being hired on June 19, 2000, in violation of M.G.L. c.151B s4(1) and Title VII of the 1964 Civil Rights Act.

SEE ATTACHED FOR PARTICULARS

I ALSO WANT THIS CHARGE FILED WITH EEOC:__XX__
I WILL ADVISE THE AGENCIES IF I CHANGE MY ADDRESS OR TELEPHONE
NUMBER AND I WILL COOPERATE FULLY WITH THEM IN THE PROCESSING
OF MY CHARGE IN ACCORDANCE WITH THEIR PROCEDURES.
I SWEAR OR AFFIRM THAT I HAVE READ THIS COMPLAINT AND THAT IT IS
TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

Behzad A. Samimi

SWORN TO AND SUBSCRIBED BEFORE ME THIS ___6th___ DAY OF _August_ 2002

NOTARY PUBLIC  *Alan Casiella*

My Commission Expires: 2/7/03

# BEHZAD A. SAMIMI
36 Emerald Road • Springfield, Massachusetts 01119
Email: samimibdvs@aol.com / Home: (413) 782-0258

---

To:  Ms. Laura Brelsford
     Massachusetts Commission Against Discrimination
     439 Dwight Street, Suite 220, Springfield, MA 01103

Date: August 1, 2002

Dear Ms. Brelsford

I have been employed by "TYCO Healthcare/ Ludlow/ Kendall-LTP" for approximately 21 months. During the entire time of my employment, starting from my original hiring & interviewing process and thereafter until my final termination, the employer and it's management have shown various blatant forms of discrimination and general workplace hostility toward me. This position termination has been as the result of a series of planned and a combination of many different categories of racially motivated and discriminatory behaviors. Consequently, I have all along been adversely affected, treated unfairly, and discriminated against by one after another sequences as a result of employer misconduct. <u>The office location where I worked in "Hydro-gel/ Promeon Department" is as follows</u>:

**TYCO Healthcare/ Ludlow/ Kendall-LTP**, *(Ludlow Technical Products, LTP)*
**Two Ludlow Park Drive, Chicopee, MA 01022**
**(413) 593-6400**

According to the employer official web-site, "TYCO operates in more than 100 countries and had fiscal 2001 sales in excess of 36 billion dollars. TYCO employs 250,000 people around the world, and runs its operation from Exeter, NH." But, its headquarters are located offshore in "Bermuda". (According to the recent national and local headline news controversy that Tyco's Bermuda headquarters location had been chosen to avoid paying American taxes is an unpatriotic). <u>Its headquarter address is as follows</u>:

TYCO International Ltd.
The Zurich Centre, Second Floor
90 Pitts Bay Road, Pembroke, HN 08, Bermuda
(414) 292-8674, (www.tyco.com)

<u>TYCO Regional Main Operation Office address is as follows</u>:

TYCO International (US) Inc.
One Tyco Park, Exeter, NH 03833
(603) 778-9700

<u>Kendall/ TYCO Main Office address is as follows</u>:

Kendall/ TYCO Healthcare
15 Hampshire Street, Mansfield, MA 02048
(508) 261-08000, (www.kendallhq.com)

I hereby file this administrative charge of discrimination on the basis of combining the laws, primarily under the 7-laws (Title VII). I would like to protect my rights by proceeding under all the applicable federal and state laws, as well as other isolated laws, the 1871 Act, and OSHA for Discrimination Complaint Filing Regulations (Standards-29 CFR) and exercise any other rights afforded by the OSH Act that might likely apply to my situation. As a former supervisor, I have decided to proceed with filing this case with the office of MCAD fundamentally as a basic nature of a feeling of sympathy toward other current workers and as a desire to ensure their lawful rights at "TYCO". And, to enforce my legal demands on the aspiration towards putting forth the required applicable compliance, and creating a healthier, more protected and ethical working environment. By doing so, I am also hoping that the employer will be forced to end its unlawful discriminatory misconduct after investigation conducted by the MCAD and possibly OSHA/ U.S. Department of Labor/ National Labor Relations Board (although I have not contacted them).

---

Names of the individuals who directly committed, perpetrated, participated in, had the knowledge of, should have had the knowledge of the series of discriminatory treatments against me, and/or purposely and discriminatorily had chosen to overlook/ ignore the situations, or had misused their authority by not taking the appropriate corrective, preventive, and/or disciplinary actions, are as follow:

Dennis L. Kozlowski (TYCO International Ltd. CEO), Mark Swartz (TYCO International, CFO), Richard Meelia (TYCO Healthcare Headquarter President), Lee Carrier (Resigned President Tyco-LTP), Tom Costella (Director of Entire Plant Operation), Jim Scott (Director of Entire Manufacturing Operation), Jim Shannon (Director of Engineering & Manufacturing Dept. Director), Ralph Delullo (Environmental, Health & Safety Director), Donna Heffernan (Manager of Human Resources), Don Dastoli (Director of Human Resources), Karen Carlson (Director of Quality Control), Debra Fenton (Director of IE &TS), Deb Mikalian (Manager of IE), Roy Peloquin (Manufacturing Dept. Manager), Tony Wozniak (Director of Facility Dept.), Kelly Grandfield (Assistant Manager of Human Resources), Alexis Dow (Health and Safety Manager), Scott Coggins (Research & Development Manager), David Copy (Diversity & Training Coordinator), Nilay Sankalia (Research & Development Director), Gerry Gagne (Director of Maintenance Dept.), Patrick Malia (Quality Control Operation Manager), Jim Thomson (Manager of a Manufacturing Dept.), Luis Longo (Director of a Manufacturing Dept.).

---

## TYCO-LTP  History, Marketplace & its Core Products:

"TYCO Healthcare/ Ludlow/ Kendall-LTP" (formerly Ludlow Corporation) was acquired by TYCO International, Ltd. in 1981. In that year, LTP originally employed approximately 50 persons and currently my place of employment has expanded to between approximately 800-900 employees. In 1994 TYCO acquired Kendall International Co. and merged that operation into "Kendall-LTP". In 1995, TYCO acquired Cambrex-Hydrogels and merged that operation with the "Promeon" manufacturing plant in Chicopee. This combination resulted in a new marketing division called "Procam Medical".

"TYCO Healthcare/ Ludlow/ Kendall-LTP", located in Chicopee, manufactures & markets a broad range of medical products, and as such is in the medical products industry and healthcare marketplace. Its main product were I work represents: recording charts, heart monitoring and diagnostic ECG electrodes/ tabs, heart defibrillation pads/infant monitoring, electro-surgical grounding pads, wound-care dressings, drug delivery patches, and cosmetic facial applications. The core of the product is Hydro-gels, Tabs and electrodes, which as the product ensemble is designed to pick up the heart's electrical signals at the skin's surface. These signals must be intensely and accurately detected. The entire production process control

discipline must continuously meet all the applicable quality standard procedures and are of extreme critical importance. Different applications/procedures require different gel-mix and electrode constructions.

Appropriate gel adhesion levels keep electrodes in place and the patient comfortable. Any factor that might contribute to invalidate, or contaminate the manufacturing process of the product could present a difference between life and death of a patient. As you can see, the sterility and proper functioning of the products manufacturing by TYCO are extremely essential and have large consequences.

---

In order to adequately show the pattern and the historical background, as well as the employers course of action toward me, it is constitutive to provide you with the relevant disparate treatments from the very beginning of my employment.

Following describes the nature of the circumstantial and series of events. Each course of action that the employer has been taking is linked to previous actions and is racially motivated and wrongful discriminatory misdeeds. The actions were pre-determined and were allowed by the management throughout my employment at "TYCO".

**Element # 1, and evidence supporting the element:**

**(Disparate Racial Treatment in Pre-Employment Job Qualification, Merit and Hiring Process)**

On March 22, 2002, I responded to an ad that the employer locally advertised for the position of "Industrial Engineer/ Safety". The position required any degree in Industrial Engineering and 1-3 years of any related experience. I did not receive any acknowledgement to my letter or to my follow-up phone calls, even though academically I had received a bachelor's degree in engineering and a master's degree in Industrial Technical Management with the specialization of Manufacturing & Operation Research. Additionally, I had 12 years of top producing hands-on experience as an Industrial Hygiene/ Safety specialist.

On April 16, 2000 I noticed another ad that the employer again advertised for a "Manufacturing Supervisor". The position required any associated degree with 3-5 years related experience. This time after I applied for the position, to my surprise, the employer immediately responded to my follow-up letter and phone calls.

Later on, after I became employed by this employer, I noticed that the "Industrial Engineering" position had been filled by an individual with much less education and related work experience than me. *Although I could have always chosen to take an action against discrimination, in good faith I chose to rest my case.*

**Element # 2, and evidence supporting the element:**

**(Disparate Racial Treatment in Hiring Process, Salary Increase, and Verbal Agreements Guarantee)**

On April 26, 2000 I had my first interview with Mr. Jim Shannon as my potential future immediate manager. Pending the hiring process, I went through a course of four interviews and met with different individuals each time. Some time in the beginning month of June, 2000 I received a personal phone call at home by Mr. Jim Shannon with a salary offer of $47,000.00. During the phone call, while I sounded extremely grateful and delighted about the offer as naturally as anyone else would, I very politely attempted to see if the employer would consider to at least meet my previous salary of $50,000.00. But, all of a sudden, Mr. Shannon became extremely annoyed by my very fair request. And right after my inquiry, Mr. Shannon in an

unusual tone of voice informed me that since I am trying to negotiate for this additional $3,000.00, now he does not even feels comfortable to go ahead with hiring me. I then immediately and apologetically attempted to clarify that I did not mean to upset him by any means. Just as I was trying to clear the misunderstanding and justify my negotiation, Mr. Shannon cut me short and continued to say that if he changes his mind as far as proceeding with this interviewing and hiring process he will call me back. It was as if Mr. Shannon had quickly reacted to the above salary negotiation, that he was surprised and caught off-guard that with all my qualifications, I had only asked for only a few thousands more than his offered salary, and that I may even accept that offer. It seemed through his reaction that he was wishing to get me discouraged, or fed up so that I would not want to work under his supervision. Genuinely, for a second, at first that's exactly what came to my mind. To me it was unheard of that a very senior manager at a big company handling a simple fair negotiation that way, especially as an individual who would be possibly be my future immediate manager. But, I wanted to be optimistic and to think in good faith, and also to possibly reverse this situation to a possible reconsideration of proceeding with the hiring process.

So, the day after the above salary negotiation, I called Mr. Shannon, Mr. Tom Costella (Mr. Shannon's manager), and Ms. Donna Heffernan (Human Resources Manager) on the telephone. I left a very courteous message on their voicemail thanking them for the opportunity to be interviewed and for their offer, and expressed my continued enthusiasm if I would be given the chance to join the company. And, again the above calls were made by me in good faith and I never mentioned the previous day's conversation that I had had with Mr. Shannon, even though I had thought it to be unprofessional. I also need to mention that I had also sent individualized "thank you" letters for the interview opportunity to all the people involved.

Approximately a few weeks later, I received a call directly from Mr. Shannon. He informed me that the company was still willing to offer me the salary of $ 47,000.00. But when I still attempted to negotiate the salary, he gave me his verbal agreement that at the end of the remaining year (meaning the next 6-months) I would be considered for a raise as if I have worked the entire year. And, that the company would base my salary increase on working one full year. Needless to say, I gladly accepted the offer at $47,000 on the understanding of that verbal agreement.

On June 15, 2000 I again sent individualized thank-you letters to each individual that had participated in my hiring process, including the secretary and receptionist, and expressed my enthusiasm for joining the ranks. My employment began at "Tyco" on June 19, 2000.

Going back to my earlier paragraph, I need to reference a point in regards to the verbal agreement that at the end of the year I would receive a salary increase. Not only did I receive the lowest salary increase in the range of norm (between 3-6%), but also the employer then cut the 3% salary increase to 1.5%. Their reasoning was that I had only worked half of the year. I was also told that I would have to wait another whole year to be considered for another salary increase. I also need to mention that other comparable supervisors that only had high school diplomas were making approximately $3-5 more and hour than me, even though I had a Master's in Manufacturing Management and Engineering degree. When I politely reminded Mr. Shannon in the presence of his assistant manager, Mr. Roy Peloquin, about the verbal agreement that at the end of the remaining year I would be considered as if I have worked the entire year, he responded that he does not quite clearly remember the agreement and that besides, it had not been in writing. Mr. Shannon did not want to hear any more about it and that was that. Later on, in the following week, I attempted to as quietly and diplomatically as possible to bring this issue forward to the Human Resources Department (Donna Heffernan & Kelly Grandfield), but they also did not give me any clear answers.